# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,

Plaintiffs-Appellees/Cross-Appellants,

v.

CAL-MAINE FOODS, INC.,

Defendant-Appellant/Cross-Appellee,

and

TYSON FOODS, INC., et al.,

Defendants/Cross-Appellees.

No. 26-5000
(D.C. No. 4:05-CV-00329-GKF-SH)
(N.D. Okla.)

---

STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,

Plaintiffs-Appellees/Cross-Appellants,

v.

CARGILL, INC., et al.,

No. 26-5001
(D.C. No. 4:05-CV-00329-GKF-SH)
(N.D. Okla.)

v.

| | |
|---|---|
| Defendants-Appellants/Cross-Appellees,<br><br>and<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants/Cross-Appellees. | |
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,<br><br>Plaintiffs-Appellees/Cross Appellants,<br><br>v.<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants-Appellants/Cross-Appellees,<br><br>and<br><br>CAL-MAINE FOODS, INC., et al.,<br><br>Defendants/Cross-Appellees. | No. 26-5002<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al., | No. 26-5003<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |

Plaintiffs-Appellees/Cross-Appellants,

v.

PETERSON FARMS, INC.,

Defendant-Appellant/Cross Appellees,

and

TYSON FOODS, INC., et al.,

Defendants/Cross-Appellees.

---

STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,

Plaintiffs-Appellees/Cross-Appellants,

v.

SIMMONS FOODS, INC.,

Defendant-Appellant/Cross-Appellee,

and

TYSON FOODS, INC., et al.,

Defendants/Cross-Appellees.

No. 26-5004
(D.C. No. 4:05-CV-00329-GKF-SH)
(N.D. Okla.)

| | |
|---|---|
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,<br><br>Plaintiffs-Appellees/Cross Appellants,<br><br>v.<br><br>GEORGE'S, INC., et al.,<br><br>Defendants-Appellants/Cross-Appellees,<br><br>and<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants/Cross-Appellees. | No. 26-5005<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,<br><br>Plaintiffs-Appellants<br><br>v.<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants-Appellees. | No. 26-5010<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |

| | |
|---|---|
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants-Appellants<br><br>and<br><br>CAL-MAINE FOODS, INC., et al.,<br><br>Defendants. | No. 26-5039<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>GEORGE'S, INC., et al.,<br><br>Defendants-Appellants,<br><br>and<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants. | No. 26-5043<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |

| | |
|---|---|
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>PETERSON FARMS, INC.,<br><br>Defendant-Appellant,<br><br>and<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants. | No. 26-5044<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>CARGILL, INC., et al.,<br><br>Defendants-Appellants,<br><br>and<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants. | No. 26-5045<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |

| | |
|---|---|
| STATE OF OKLAHOMA EX REL. GENTNER DRUMMOND, in his capacity as Attorney General of the State of Oklahoma, et al.,<br><br>Plaintiffs-Appellants/Cross-Appellees,<br><br>v.<br><br>TYSON FOODS, INC., et al.,<br><br>Defendants-Appellees/Cross-Appellants. | No. 26-5065<br>(D.C. No. 4:05-CV-00329-GKF-SH)<br>(N.D. Okla.) |

**RENEWED JOINT MOTION BY THE STATE OF OKLAHOMA AND APPELLANTS TO VACATE JUDGMENT**

The last time the parties jointly sought vacatur, the Court directed a limited remand to allow the district court to "consider the parties' request for relief from judgment in light of the changed circumstances in the first instance." Dkt. 64 at 7. This Court explained that the parties could file their motion "again should the course of events warrant." Dkt. 64 at 7. That time has come. The district court has again denied the parties' joint motion for relief from the judgment. This Court is now the only path to effectuating the parties' settlement of this litigation and avoiding still more costly litigation in this already two-decade saga.

After more than twenty years of hard-fought litigation, two trials, and now twelve pending appeals and cross-appeals, the parties have finally reached an amicable resolution. Their settlement provides immediate remediation in the Illinois River Watershed and removes the uncertainty of protracted appellate proceedings that would otherwise continue to drain party and judicial resources. And it obviates the need for this Court to adjudicate a dozen appeals presenting a thicket of complex and novel legal questions.

But this carefully crafted compromise cannot coexist with the existing judgment and its inquisitorial special-master regime. The State of Oklahoma and the appellant companies thus stand united in their view that everyone—the parties, the courts, and the public—would be best served by vacatur of the judgment, which the District Court has again refused to grant.

The parties therefore jointly move this Court to exercise its broad equitable authority under 28 U.S.C. § 2106 to vacate the judgment below and remand so that the parties may finally and forever dismiss this litigation. By its terms, the settlement agreement expires if the

judgment is not vacated by January 10, 2027. The parties thus respectfully ask the Court to rule on this motion on or before that date.

## BACKGROUND

### I. This Litigation

This case began in 2005, when Oklahoma state officials sued a group of poultry companies for allegedly contaminating the Illinois River Watershed. *See* Add.039–40. The complaint concerned the environmental impacts of "poultry litter," a mix of poultry manure and bedding material that farmers use to fertilize their fields. *See* Add.046. The State asserted that the poultry companies who engage independent farmers to raise their birds are vicariously liable for this alleged environmental harm. Add.052. The case went to trial in late 2009 and, after a shocking thirteen-year delay, the court held the poultry companies liable in January 2023. Add.039.

The parties spent most of 2023 trying to settle. These settlement efforts included multiple mediation sessions with former Tenth Circuit Judge Deanell Reece Tacha, along with countless other in-person meetings and written exchanges. *E.g.*, Add.056; Add.067. Despite their best efforts, the parties were unable to reach an agreement, and negotiations continued into 2024 and 2025. In December 2024, the court

required the parties to retry discrete issues, though declined to hold a hearing regarding the appropriate remedy. The parties continued their efforts to resolve the matter, and "rigorous discussions" were still ongoing when the district court issued its judgment in December 2025. Add.067; *see* Add.069.

The judgment gave both sides further reason to settle. It awarded the State some—but not all—of the remedies it sought. *Compare* Add.099–100, *with* Add.094 (reducing civil penalties below State's request). The poultry companies, in turn, avoided some civil penalties but were saddled with an open-ended special-master regime funded entirely at their expense—and even requiring Defendants who had left the watershed to fund the special master. Add.094. Critically, the judgment tasks the court-appointed special master with crafting remedies, independently "monitoring compliance with th[e] judgment," and "report[ing] … to the court … all … violations" of the judgment. Add.079–80.

The parties quickly concluded that a different solution was warranted. Agricultural organizations criticized the judgment for establishing excessive governmental oversight. *See Statement: OKFB disappointed by court's findings in decades-long poultry lawsuit*, Okla.

Farm Bureau (Dec. 23, 2025), bit.ly/OKFB_Statement. And local farmers and small businesses voiced concerns over the judgment's effect on their work. *E.g.*, Add.106; Add.113. Understanding those concerns and seeking a balanced solution that protects natural resources while supporting the agricultural community, the State agreed to a stay of the judgment's monetary portions, pending appeal. Add.128. The judgment's ban on litter application in the watershed, however, remained in effect at that time.

The parties then noticed appeals, triggering an expensive and risky new phase of litigation. From the outset, the appeals promised to be extraordinarily complex. The parties, joined by a group of *amici*, initially battled over the companies' motion for a stay pending appeal. *See* Dkts. 23, 29, 32; *see also* Dkt. 38 (denying stay). And as merits briefing began in earnest, it became apparent just how intricate these appeals would be: they'll raise over a dozen legal issues, many involving a trial record spanning tens of thousands of pages and novel questions of Oklahoma and federal law. (*E.g.*, Does the Clean Water Act displace the federal common law of nuisance as applied to interstate water pollution from nonpoint sources? May a district court, consistent with due process

and equity, enter an injunction after taking no action in a case for 13 years? Is issuing a multistep injunction administered by a special master with a 30-year term within the equitable authority conferred on federal courts by the Judiciary Act of 1789? Does the record support imposing 30-year prospective injunctive relief on companies that have left the watershed with no plans to return?)

In light of that complexity, the Court afforded the parties up to 10 briefs and a total of 176,640 words to make their arguments, *see* Dkt. 58—more than three and a half times the length of a standard cross-appeal (and that's ignoring the half dozen anticipated amicus briefs), *see* Fed. R. App. P. 28.1(e)(2). Pressing forward with the appeals would mean millions in legal fees for each side, not to mention the possibility that favorable rulings could be reversed.

These realities finally led the State and four of the six sets of defendants (George's, Tyson, Cargill, and Peterson) to agree upon proposed consent judgments in early 2026. Because these negotiated resolutions could not take effect while the original judgment remained in place, the parties' settlement agreements were expressly conditioned on vacatur of the judgment. The settling parties thus filed joint motions for

an indicative ruling that the district court would modify or vacate its judgment under Rule 60(b). *See* Fed. R. Civ. P. 62.1; Fed. R. App. P. 12.1. The district court denied the motions, primarily on the ground that post-settlement vacatur was, in its view, improper under *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994). Add.138, 142–45. The parties to those settlements appealed that denial, too, adding another set of issues for this Court to address on appeal.

## II. The Agreement

The parties then returned to the bargaining table and negotiated a new agreement. This time, all six sets of defendant companies joined. The agreement has three key provisions.

First, the companies agree to pay a combined $41,671,000 into an "Environmental Relief Fund." Add.003. The State will control the fund, which will be used for "furthering, in accordance with Oklahoma law, environmental stewardship of Oklahoma's scenic waterways" through the Oklahoma Conservation Commission, as well as making "payment of attorneys' fees and/or litigation expenses incurred by the State and/or its outside private attorneys." *Id.*

Second, the companies agree to limit the volume of litter generated on company-owned farms that could be spread on farmland in the watershed. Add.006–10. The companies will seek to impose similar volume limits on poultry litter generated by farmers located in the watershed with whom they have contracts. And these limits grow more stringent over time. Add.007. The companies also accepted limitations in the settlement agreement that discourage merely shifting the volume of litter produced in the Illinois River Watershed to other nearby "Oklahoma Nutrient Sensitive Watersheds" (a term defined in the settlement)—an expansion over the existing judgment. *Id.*

Finally, the parties agree to a series of releases. The state officials agree to "fully, finally, and forever release" the settling companies from all "liabilities and obligations" under "the December 19, 2025, Judgment." Add.017–18. Both parties agree to "release" the farmers with whom the companies had contracted from any liability relating to the litigation. Add.020. And the settling companies promise not to use the settlement as a "basis for any decision not to renew or extend contracts" with the released farmers. *Id.*

## III. Requests for Vacatur

The parties' settlement agreement is incompatible with the original judgment. Accordingly, in July 2026, the parties jointly moved this Court to stay and vacate the judgment.

In August 2026, the Court stayed the judgment and directed a limited remand to the district court to consider the parties' request for relief from the judgment. Dkt. 64 at 7. This Court denied the vacatur motion without prejudice, noting the parties could refile their motion to vacate "again should the course of events warrant." *Id.*

In September 2026, the parties moved the district court for relief from the judgment under Rule 60(b)(5) and 60(b)(6). Add.154. Because the settlement expires if the judgment is not vacated by January 10, 2027, the parties respectfully requested expedited consideration, noting that they planned to seek prompt relief in the Tenth Circuit should the district court deny vacatur. Add.177.

Two months passed. On November 10, 2026, the defendants filed a letter with the district court respectfully requesting the court to resolve the pending Rule 60(b) motion. The letter reiterated that given the January 2027 settlement expiration deadline, "the parties will soon have

no choice but to ask the Tenth Circuit for relief." Add.222. The parties noted that although they "appreciate the burdens on [the district court's] docket," they simultaneously "recognize the burdens on the Tenth Circuit's docket and seek to ensure that it would have sufficient time, if necessary, to decide a renewed motion to vacate," especially in light of upcoming Thanksgiving and winter holidays. *Id.*

On November 18, 2026, the district court denied the Rule 60(b) motion. Add.224–40. Although the State had agreed to a full and final release of the judgment, the court held that Rule 60(b)(5) does not apply because the court mistakenly believed the settlement's release is conditioned on vacatur. The court also held that in any event the settlement is not an adequate substitute for the judgment. Add.232–36. It also held that the parties had not shown the extraordinary circumstances required by Rule 60(b)(6). In the court's view, the parties' litigation conduct—including asking for a trial on changed environmental conditions after the district court's thirteen-year delay in ruling after trial, disentitled them to equitable relief, and vacatur would disserve the public interest. Add.236–40. Mindful of the settlement

expiration, the parties now renew their motion to vacate the judgment in this Court.

## ARGUMENT

### I. Equitable Vacatur is Warranted.

The parties jointly ask the Court to exercise its equitable authority under 28 U.S.C. § 2106 to vacate the judgment, effectuating the parties' settlement and ending any further expense of party and judicial resources on this litigation.

#### A. Section 2106 allows for vacatur as justice warrants.

Appellate courts retain "broad power" under 28 U.S.C. § 2106 to vacate a judgment "'as may be just under the circumstances.'" *Lawrence v. Chater*, 516 U.S. 163, 166 (1996) (per curiam) (quoting 28 U.S.C. § 2106). Section 2106's instruction to grant relief "as may be *just*" is a "hallmark of traditional equitable practice." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 347 (2024) (emphasis added). And "in determining what justice does require," appellate courts must "consider any change, either in fact or in law, which has supervened since the judgment was entered." *Patterson v. Alabama*, 294 U.S. 600, 607 (1935).

As this Court recognized in its order remanding in light of our prior motion, settlement is a paradigmatic change in circumstances that

warrants vacatur under § 2106. *Major League Baseball Properties, Inc. v. Pacific Trading Cards, Inc.*, 150 F.3d 149 (2d Cir. 1998), is a good example. The private parties there "needed a vacatur" to end their dispute on a "satisfactory" basis, and "the victor in the district court wanted a settlement as much as … the loser did." *Id.* at 152. The Second Circuit ruled those circumstances sufficient to warrant § 2106 vacatur. *Id.* at 152–53.

Likewise, in *Hartford Casualty Insurance Co. v. Crum & Forster Specialty Insurance Co.*, 828 F.3d 1331 (11th Cir. 2016), as in *MLB*, the parties executed a settlement "expressly conditioned on the District Court's orders being vacated," and "both parties to the settlement desire[d] vacatur because settlement would otherwise be impossible." *Id.* at 1336. The Eleventh Circuit stayed the pending appeal so the parties could seek vacatur in the district court, and when the district court denied relief, the Eleventh Circuit reversed and vacated the orders itself, reasoning that vacatur was the best way to serve both parties' interests and further proceedings would be curtailed, conserving judicial resources. *Id.* at 1336–37. The court acknowledged the public interest in preserving a district court ruling, but reasoned that "the slight value

of preserving that precedent to the public interest generally … is outweighed by the direct and substantial benefit" to the parties and to the judicial system of settling the case. *Id.*

**B. Vacatur is Just Under the Present Circumstances.**

**1.** The equities compel vacatur here. If the existing judgment is permitted to continue, it will (i) drain party and judicial resources by perpetuating litigation, (ii) saddle nonparties with uncertainty and risk, and (iii) offer limited environmental protection and little immediate funding. Vacatur provides an ideal alternative that is "'just under the circumstances,'" *Lawrence*, 516 U.S. at 166 (quoting 28 U.S.C. § 2106)—one that effectuates the goals of environmental remediation while delivering certainty and avoiding needless expense and delay.

After years of good-faith negotiations, the parties have reached an agreement that resolves all outstanding issues in this litigation. For starters, the agreement binds *all* defendants—addressing a key concern the district court had when it denied the parties' April 2026 consent-judgment motion. Add.146. It also provides $41,671,000 that the State may use for immediate environmental remediation. And the agreement sets a phased regime limiting litter application in the watershed without

merely shifting the volume to *another* nutrient-sensitive watershed in Oklahoma, giving it a broader scope than the existing judgment. These latter provisions, however, are conditioned on vacatur of the judgment and dismissal of the litigation, because the settlement's remediation and litter-management regime can't exist while the judgment below continues to impose materially different obligations enforced by an inquisitorial special master operating with an unlimited budget.

Should the judgment remain in place, the harm will be significant. The State and the companies will be forced back into complex and protracted litigation with no clear end in sight. That means serious risk and significant expense.

Then there are the costs to "judicial resources." *Hartford*, 828 F.3d at 1337. As this Court has acknowledged, "this is a complex case with a voluminous record and consolidated cross-appeals." Dkt. 54 at 7. That is putting it mildly. The twelve pending appeals and cross-appeals would require a panel of this Court to wade through over 500 pages of briefing and volumes of record evidence, and to adjudicate a host of novel and complex issues relating to liability, remedies, and post-judgment relief—not to mention the potential for remand, retrial, and a second round of

appeals. The result would be years of additional litigation, at great cost to all involved, just to assess the legality of an expansive and time-consuming injunctive remedy that no one wants. "Conserv[ing]" this Court's resources is a "virtue" of vacatur. *Lawrence*, 516 U.S. at 167.

Vacatur also benefits nonparties and the public writ large. Without vacatur, farmers under contract with the settling companies will remain in limbo—they would receive none of the certainty, liability releases, or contract-renewal protections that the settlement affords them. Further litigation also means the judgment might not survive at all, leaving no basis for environmental remediation. And even if the Court eventually affirmed the existing judgment, that would leave Oklahoma with *less* environmental protection in certain key respects. Namely, it would deny the State immediate remediation funding and it would eliminate protections the State negotiated in the settlement for other nearby nutrient-sensitive watersheds. *See* Add.099–100.

It is for all these reasons that the State—the party charged with protection of the waters—has determined that settlement and vacatur "best serve[] the public interest." Add.003. "[P]rinciples of federalism require that federal courts give 'significant weight'" to such views.

*Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1192 (10th Cir. 2018). And here, Oklahoma has concluded that settlement and vacatur is the right approach to protect the watershed and the public.

**2.** The district court weighed the equities differently when it denied Rule 60(b) relief. The Court need not review the district court's Rule 60(b) analysis; § 2106 is an independent grant of authority to vacate the judgment, and the parties are separately appealing the court's Rule 60(b) denial. Still, because the equitable analysis under § 2106 partially overlaps with that under Rule 60(b), the parties briefly address the flaws in the district court's reasoning.

First, the district court said the parties had not "do[ne] equity" because defendants "monopoliz[ed]" the court's resources "for years, often for the sole purpose of delay," and the State put "political pressures over substance." Add.238. Recall, however, that it was the district court that took *thirteen years* to rule after trial—an extraordinary delay that the court has never explained. That defendants insisted on ensuring the court's findings were consistent with then-current environmental conditions was a good-faith effort to defend themselves, as the court recognized when it scheduled a trial to take evidence on current

conditions. This wasn't delay for delay's sake, and, until now, the district court has never suggested otherwise. As for the State, its decision to settle—after a judgment and its appeals revealed the risk and expense of continuing—reflects the ordinary calculus of any litigant. And the State was negotiating toward settlement long before the judgment issued. *See* Add.067. That the State, through its elected Attorney General, concluded that settlement was in the best interests of Oklahoma is a decision that should be respected, not chastised or second-guessed.

Second, the district court reasoned that vacatur would waste the judicial resources already invested in this case and would treat the judgment as a "bargaining chip." Add.238–39. That analysis would render any settlement a waste of judicial resources. The only open question is whether settlement would allow this Court and the parties to avoid spending even more resources. Nor would vacatur erase the district court's work in any event. No one is asking to vacate the district court's 200-plus-page findings and conclusions—only the resulting judgment. Indeed, the district court viewed as "persuasive authority" on liability an earlier district court opinion that had been "vacated … as part of [a]

settlement," Add.053—proof positive that vacatur won't render the district court's efforts pointless.

Finally, the district court concluded that the public interest favors "prospective application of the Judgment over the Settlement" because it views the settlement as inadequate. Add.234–36, Add.239. The parties respectfully disagree, but the Court need not resolve that dispute to see the flaw in the comparison. The alternative to the settlement is not a judgment that will deliver the district court's full remedy. It is a judgment this Court has stayed, that twelve pending appeals challenge on multiple grounds, and that may be reversed or narrowed years from now. The State weighed that risk against the settlement's immediate funding and immediate environmental impact and judged the settlement the better protection for the watershed. That judgment, made by a sovereign trustee of the resource at stake, deserves significant weight in deciding which outcome serves the public.

## II. *Bancorp* Poses no Barrier to Relief.

**A.** The Supreme Court's decision in *Bancorp* leaves ample room for equitable vacatur under these circumstances.

In *Bancorp*, the petitioner lost on appeal and sought Supreme Court review, but the parties settled after certiorari was granted, mooting the case. 513 U.S. at 20. The petitioner then asked the Court to vacate the appellate court's judgment—a request the respondent "opposed." *Id.* The Court denied relief because the petitioner had "voluntarily forfeited his legal remedy" and thus "disentitle[d]" himself to equitable vacatur. *Id.* at 25 (citation omitted). The "mere fact" that a settlement had "mooted the case" was not enough to warrant relief under § 2106. *Id.* at 20, 29. That was especially so because vacatur in that case would have expunged "[j]udicial precedent[]." *Id.* at 26.

This case is miles from *Bancorp*. Here, neither Oklahoma nor the companies have forfeited their conventional legal remedies: both will continue to press their appeals if the judgment is not vacated pursuant to the parties' settlement. This is simply "not a case in which a defendant has manipulated the judicial process by deliberately aborting appellate review to avoid a decision on the issues." *McClendon v. City of Albuquerque*, 100 F.3d 863, 868 (10th Cir. 1996).

Another critical distinction: no party "oppose[s]" vacatur here. *Contra Bancorp*, 513 U.S. at 20. Quite the contrary. Both Oklahoma, a

party and sovereign charged with protecting the watershed, and Appellants firmly *support* vacatur. Requiring the parties to continue litigating over a judgment no one wants would upend the foundational rule that federal courts exercise their authority "only in the last resort, and as a necessity in the determination of real, earnest, and vital controversy between individuals." *Chi. & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892).

Nor are *Bancorp*'s concerns about preserving judicial precedent implicated here. District-court decisions are "not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case," *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Russman v. Bd. of Educ.*, 260 F.3d 114, 121 n.2 (2d Cir. 2001) ("the loss of the persuasive authority of the district court's judgment is of less compelling concern"). And in any event, no party is asking this Court to vacate the district court's two lengthy opinions on liability. Whatever persuasive value those opinions have will remain even after vacatur, as this case proves. *See* Add.053 & n.42 (citing as "persuasive authority" a Northern District of Oklahoma decision that "was vacated by unopposed motion solely as part of the settlement of the action").

The equities here are also starkly different than those in *Bancorp*. *See Starbucks*, 602 U.S. at 347 (equity looks to what is "just" in each case). Vacatur would result in immediate relief and avoid protracted litigation, along with all the uncertainty, expense, and burdens that come with it. That's a far cry from *Bancorp*, where the petitioner sought post-settlement vacatur primarily to erase an unfavorable ruling below.

**B.** In both of its orders denying Rule 60(b) relief, the district court invoked *Bancorp* to deny post-settlement vacatur. Add.142–45; Add.234, Add.236–39. If the judgment is not vacated and these appeals proceed, the parties will present a more robust critique of those orders in their merits briefing addressing Rule 60(b), which deals with a different source of vacatur authority implicating distinct arguments. Nonetheless, the court's use of *Bancorp* warrants brief discussion here.

To start, the district court concluded that the parties contravened *Bancorp* by "roll[ing] the dice" and then seeking to "erase the result of that gamble through vacatur." Add.145; Add.238. That was wrong, legally and factually. *Bancorp* mentioned "dice-rolling" only in rejecting the petitioner's policy argument that settlement saves judicial resources, ultimately finding such arguments "quite impossible to assess." 513 U.S.

at 28. It never held that "dice-rolling" justifies denying vacatur. To the contrary, *Bancorp* recognized that the availability of vacatur "may facilitate settlement after the judgment under review has been rendered and certiorari granted (or appeal filed)"—the very posture here. 513 U.S. at 27–28. And regardless, any "roll the dice" concern doesn't apply here: the parties did not gamble on the judgment and then seek to erase it—they negotiated continually since January 2023, and it's far from surprising that a judgment and its appeals spurred settlement once neither side got what it wanted. (Not to mention: some parties had left the watershed *before* the judgment was entered; those entities' decisions to settle were not dice rolling, but rather routine exercises of business judgment.) In any event, treating every unsuccessful prejudgment negotiation as a gamble would disqualify every post-judgment settlement from vacatur, contrary to *Bancorp*'s recognition that exceptional circumstances may warrant it. 513 U.S. at 29.

More fundamentally, the district court read *Bancorp* to impose an extraordinarily high bar to vacatur following settlement. *See* Add.144–46; Add.236–39. That reading did not properly account for the traditional equitable principles underlying *Bancorp*. The statute that *Bancorp*

applied (and that this Court must apply here) "is flexible," allowing the court to do what is "just under the circumstances"—a hallmark of traditional equity. *Alvarez v. Smith*, 558 U.S. 87, 94 (2009) (quoting 28 U.S.C. § 2106). To that end, as the Supreme Court has explained in applying *Bancorp*, courts must consider "the *kind* of settlement" and the facts surrounding it. *Id.* (emphasis added). Post-settlement vacatur is not, therefore, *per se* improper. And here, as both sides agree, the specific circumstances strongly favor vacatur.

The district court's latest order also stresses two points from *Bancorp*: that "the mere fact that the settlement agreement provides for vacatur" is not an exceptional circumstance, and that a judgment "should stand unless a court concludes that the public interest would be served by a vacatur." Add.232, Add.234, Add.236; *Bancorp*, 513 U.S. at 26, 29. The parties accept both propositions. They do not rest on the existence of a vacatur condition, and they welcome the public-interest inquiry. That inquiry favors vacatur here for the reasons given above.

Nor would it make sense to construe *Bancorp* as imposing a rigid bar to post-settlement vacatur. "The Constitution permits [courts] to decide legal questions only in the context of actual 'Cases' or

'Controversies.'" *Alvarez*, 558 U.S. at 92 (quoting U.S. Const., Art. III, § 2). The parties have reached an agreement that will resolve their controversy. But as long as the judgment stands, the parties will be trapped in seemingly endless litigation, consuming this Court's time and resources for years to come, all over a judgment that no one wants. That doesn't accord with the federal courts' role as "essentially passive instruments of government," *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020), let alone common sense.

In all events, even under the most rigid reading of *Bancorp*, this is an exceptional case. Extraordinary circumstances abound: the resolution of two decades of hard-fought litigation, the sovereign State's determination that vacatur is in its best interest, the prospect of immediate environmental relief, and the need to avoid protracted litigation that will deepen uncertainty and burn the time and resources of all involved. If any case warrants vacatur, it's this one.

## CONCLUSION

For these reasons, the Court should vacate the judgment below and remand to enable the parties to fully and finally dismiss this litigation and effectuate their settlement.

November 25, 2026

/s/ *Garry M. Gaskins, II*
Gentner Drummond, OBA #16645
*Attorney General*
Garry M. Gaskins, II, OBA #20212
*Solicitor General*
Jennifer L. Lewis, OBA #32819
*Deputy Attorney General*
Office of Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov

M. David Riggs, OBA #7583
Kristopher Koepsel, OBA #19147
Riggs, Abney, Neal, Turpen,
Orbison & Lewis
502 West 6th Street
Tulsa, OK 74119
(918) 587-3161

Louis W. Bullock, OBA #1305
Bullock Law Firm PLLC
110 W. 7th Street
Tulsa, OK 74119
(918) 584-2001

Frederick C. Baker
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
(843) 216-9186

*Counsel for Appellees, Cross-Appellants in No. 26-5010, Appellants in No. 26-5065*

Respectfully submitted,

*/s/ Gordon D. Todd*
Mark D. Hopson
Frank R. Volpe
Gordon D. Todd
*Counsel of Record*
Peter A. Bruland
Cody M. Akins
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
gtodd@sidley.com

John M. Tanski
TYSON FOODS, INC.
2200 W. Don Tyson Pkwy.
Springdale, AR 72762
(479) 290-1953
john.tanski@tyson.com

*Counsel for Appellants in Nos. 26-5002, 26-5039, Cross-Appellees in No. 26-5010*

/s/ A. Scott McDaniel
A. Scott McDaniel
McDaniel Acord, PLLC
9343 East 95th Court
Tulsa, OK 74133
(918) 382-9200

*Counsel for Appellant in Nos. 26-5003, 26-5044, Cross-Appellee in No. 26-5010*

/s/ Christopher M. Scaperlanda
Christopher M. Scaperlanda
Justin T. Hiersche
McAfee & Taft P.C.
211 N. Robinson Ave.
Oklahoma City, OK 73102
(405) 552-2356
Christopher.scaperlanda@mcafeetaft.com

*Counsel for Appellant in Nos. 26-5000, Cross-Appellee in No. 26-5010*

/s/ Perry L. Glantz
Perry L. Glantz
Stinson LLP
1144 15th Street, Suite 2400
Denver, CO 80202
(303) 376-8410

*Counsel for Appellants in Nos. 26-5005, 26-5043, Cross-Appellees in No. 26-5010*

/s/ Vicki Bronson
Amy M. Stipe
Gerard M. D'Emilio
GableGotwals
BOK Park Plaza
499 West Sheridan Avenue
Suite 2200
Oklahoma City, OK 73102
Telephone: (405) 235-5500

John R. Elrod
Vicki Bronson
Spencer Fane LLP
4375 N. Vantage Drive
Suite 405
Fayetteville, AR 72703
(479) 582-5711
(479) 358-1518 (facsimile)
jelrod@spencerfane.com
vbronson@spencerfane.com

*Counsel for Appellant in No. 26-5004, Cross-Appellee in 26-5010*

*<u>/s/ John H. Tucker</u>*
John H. Tucker
Colin H. Tucker
Rhodes Hieronymus Jones
Tucker & Gable
Two W. 2nd Street
Suite 1000
P.O. Box 21100
Tulsa, OK 74121-1100
(918) 582-1173
(918) 592-3390 (facsimile)
jtucker@rhodesokla.com
thill@rhodesokla.com
chtucker@rhodesokla.com

Aaron D. Van Oort
Christopher H. Dolan
Jeffrey P. Justman
Teresa G. Akkara
Faegre Drinker Biddle & Reath LLP
2200 Well Fargo Center
90 South 7th Street
Minneapolis, MN 55402
Main: (612) 766-7000
aaron.vanoort@faegredrinker.com
chris.dolan@faegredrinker.com
jeff.justman@faegredrinker.com

*Counsel for Appellants in Nos. 26-5001, 26-5045,*
*Cross-Appellees in No. 26-5010*

## CERTIFICATE OF COMPLIANCE

This motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. It complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,545 words, excluding the sections listed in Rule 32(f).

*/s/ Garry M. Gaskins, II*

## CERTIFICATE OF SERVICE

I certify that on November 25, 2026, I electronically filed this document with the Clerk of the Court using the CM/ECF System, which will send notice to all registered CM/ECF users.

*/s/ Garry M. Gaskins, II*